In the Matter of the Claim of DOROTHY BESNER, Respondent, v. WALTER KIDDE NUCLEAR LAB. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and the carrier from a decision and award of the Workmen's Compensation Board, one member dissenting, on the ground that the record does not contain substantial evidence that the deceased employee developed acute myeloblastic leukemia as a result of his employment. Decedent, a theoretical physicist, began work for the employer herein in November, 1955. One year later it was discovered that he was suffering from acute myeloblastic leukemia from which he subsequently died in February, 1958 at the age of 36. Claimant's position is that the leukemia developed from decedent's exposure to radioactive material while employed by the employer herein. It is undisputed that decedent's only known exposure to radiation occurred at the employer's plant. While the expert witnesses disagreed over whether leukemia could develop so suddenly after exposure to radiation, if this were the only question involved we would have little difficulty in affirming (see *Matter of Hassell* v. *Oxford Filing Supply Co.,* 16 A D 2d 534; *Matter of Berman* v. *Werman & Sons,* 14 A D 2d 631, motion for leave to appeal granted 10 N Y 2d 706, motion to compel respondent to accept notice of appeal denied, 10 N Y 2d 1007). The difficulty as we see it here is whether claimant's sole expert testifying to causal relationship based his opinion on a completely erroneous premise as to the length of exposure involved and/or a set of facts as to the amount, nature or duration of the alleged exposure unsubstantiated by the record. The record reveals that decedent's regular place of work was in an open area 150 to 200 feet from laboratories where radioactive materials were used but that on occasion decedent's work required him to spend time in a chemistry laboratory adjacent to the employer's "hot" lab where radioactive materials were kept. When in the chemistry lab decedent was working with an analytical balance which was situated against a double wall of masonite separating the chemistry lab from the "hot" lab. On the other side of the wall approximately 3 to 5 feet from where decedent would have been seated when utilizing the balance was located an ion-exchange column. While the record reveals that the radiation level at the time of use through the wall into the chemistry lab was between 6 and 10 milliroentgens per hour, there is no evidence in the record as to how frequently if at all decedent was using the balance when the ion-exchange was in operation. It is uncontroverted that when not in use the ion-exchange column was surrounded by a lead shield. A second source of radiation was 201 millicurie of Cobalt 60. This was also kept in a shielded container in the "hot" laboratory. No measurements were ever taken as to what the source would contribute to the radiation level in the chemistry laboartory but the figure of "possibly" in the range of 1 or 2 milliroentgens per hour was advanced. Again there is no proof that at any time, if at all, decedent was in the chemistry laboratory when the Cobalt 60 was actually being utilized. A third alleged source of radiation comes from one millicurie of Cobalt 60 which was brought on occasion into the chemistry laboratory for the purpose of calibrating instruments. When in the chemistry laboratory this source was kept in a lead shield next to

the analytical balance. To this source was attributed an exposure of 3 milliroentgens per hour. There is no evidence in the record, however, as to how often this source was in the chemistry laboratory or whether decedent was using the analytical balance at any time when it was in the chemistry lab. Other sources of radiation such as from the clothes of those who worked in the "hot" lab, from fumes of radioactivity which would escape when the door of the "hot" lab was opened and from a furnace used to dispose of radioactive materials are also alluded to as being present. In the hypothetical question claimant's expert was asked to assume that decedent was exposed to 2,000 to 2,250 milliroentgens during the estimated 150 hours, 5 to 6 hours a day off and on for a total estimated period over his employment of 2 to 3 weeks, he worked in the chemistry laboratory. This figure was arrived at by multiplying 150 hours by 15 milliroentgens per hour. The figure 15 milliroentgens is based on attributing 10 milliroentgens per hour to the ion-exchange column, 2 milliroentgens per hour to the 201 millicuries of Cobalt 60 and 3 milliroentgens per hour to the additional 1 millicurie of Cobalt 60. Appellants claim the record does not support the use of such a high hourly exposure in the hypothetical. We agree. As previously noted, the ion-exchange only emitted 6 to 10 milliroentgens into the chemistry laboratory when in use and there is absolutely no evidence to indicate the ion exchange was even in use when decedent was in the laboratory much less constantly in use. Similarly the assumption as to the exposure attributable to the 2 Cobalt 60 supplies are only speculation. There is no evidence that decedent was exposed to the 1 millicurie amount on each occasion when he entered the chemistry laboratory or that the 2 milliroentgens attributed to the 201 millicuries kept in the "hot" laboratory was any more than a bare possibility. The impropriety of the exposure utilized is best illustrated by the fact that checks of all employees who worked in the "hot" laboratory made at the time decedent worked in the plant revealed that not a single individual was found to have been exposed to over the maximum permissive exposure of 40 milliroentgens per week. Yet claimant's expert was asked to base his answer to the hypothetical question on the assumption that decedent was exposed to 2,000–2,250 milliroentgens during a 150-hour period or 15 milliroentgens an hour, 15 times the maximum exposure. This would make the chemistry laboratory considerably "hotter" than the "hot" laboratory. Furthermore claimant's expert prefaced his answer to the hypothetical question covering causation with the statement: "I would say that this man was exposed approximately one year." The assumption of such an exposure is not only outside the posed hypothetical statement of facts but completely unsupported by the record. Nowhere in his subsequent testimony does claimant's witness indicate his answer is based on the facts posed rather than his own assumption of the length of exposure. On this state of the record we cannot uphold the award. While we feel that after many hearings claimant may never be adequately able to establish with any certainty a fixed amount of exposure to which decedent was subjected, we do feel that she should be afforded an opportunity to do so for it may well be that her expert might still reach the same conclusions as to causation where the exposure is considerably reduced. Decision and award reversed and matter remanded to the board for further determination, with costs to appellants against the Workmen's Compensation Board. Bergan, P. J., Gibson, Reynolds and Taylor, JJ., concur.